# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| **BRIAN CHRISTOPHER LEE**, <br><br> Petitioner, <br><br> **v.** <br><br> **MICHAEL BURGESS**,[1] <br><br> Respondent. | Case No. 2:19-cv-10313 <br><br> HON. TERRENCE G. BERG <br><br> **OPINION AND ORDER AMENDING CAPTION, DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 7), DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*** |

Petitioner Brian Christopher Lee, a prisoner currently held at the Oaks Correctional Facility, in Manistee, Michigan, filed through counsel a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions on two counts of second-degree murder, Mich. Comp. Law § 750.317, for which he is serving a term of incarceration of forty-five to eighty years. Respondent filed an answer

---

[1] The caption is amended to reflect the proper respondent, the warden of the prison where Petitioner is currently incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); Rules Governing § 2254 Case, Rule 2(a), 28 U.S.C. foll. § 2254.

and Rule 5 materials. (ECF Nos. 8, 9.) Subsequently, Petitioner filed an amended petition. (ECF No. 7.) Respondent again filed an answer and pertinent Rule 5 materials. (ECF Nos. 17, 18.)

The Court has now considered the pleadings and the record. For the reasons set forth below, the amended petition for writ of habeas corpus will be denied.

## I.     Background

The Michigan Court of Appeals provided the following summary of the facts underlying Petitioner's case:

> Defendants' convictions arise from the abduction, torture, and murder of best friends, 18–year–old Abreeya Brown (Brown) and 21–year–old Ashley Conaway, after they refused to discontinue the prosecution of defendants Cain and Lee for a separate shooting incident weeks earlier. Brown and Conaway were abducted on the evening of February 28, 2012. They were placed in the trunk of a vehicle and, for a short while, were able to use their cell phones to communicate with friends and family members from their location in the trunk, but they were not seen or heard from afterward. On March 24, 2012, the police found the victims' bodies buried in shallow graves in Eliza Howell Park. Autopsies revealed that each victim had been shot in the head at close range.

*People v. Brown*, No. 314341, 2016 WL 146029, at \*1 (Mich. Ct. App. Jan. 12, 2016),[2] *rev'd in part, appeal denied in part sub nom. People v. Lee*, 501 Mich. 973 (2018) (footnotes omitted). Petitioner was tried jointly with three co-defendants before two separate juries. *Id*. On December 12, 2012, Petitioner was convicted by a Wayne County jury of four counts of second-degree murder. Mich. Comp. Law § 750.317. *Id*. He was sentenced to four concurrent prison terms of 45 to 80 years.[3] *Id*.

Petitioner filed a direct appeal by right. The court of appeals ordered Petitioner's judgment of sentence be corrected to reduce the four convictions to two, corresponding to the two victims. *Id*. at \*23. It also remanded Petitioner's case to the trial court to revisit his sentence following changes to Michigan's sentencing regime wrought by *People v.*

---

[2] For the earlier, "separate shooting incident" mentioned in the court of appeals' opinion, Petitioner and co-defendant Cain were each convicted of two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83. Petitioner was also convicted in that case of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227. *Brown*, 2016 WL 146029, at \*1, n.2.

[3] Petitioner's three co-defendants were convicted of first-degree premeditated and felony murder and torture; two were additionally convicted of unlawful imprisonment and various firearms charges. *Brown*, 2016 WL 146029, at \*1. All are serving life terms.

*Lockridge*, 498 Mich. 358 (2015). *Id*. at *22. The court otherwise affirmed Petitioner's convictions. *Id*. at *23.

Petitioner sought leave to appeal from the Michigan Supreme Court. That court largely affirmed the lower court's rulings but reversed its remand for a *Lockridge* hearing, and instead remanded the case to the court of appeals "for plenary review of the defendant's claim that his sentence was disproportionate under the standard set forth in *People v. Milbourn*, 435 Mich. 630, 636, 461 N.W.2d 1 (1990)." *People v. Lee*, 501 Mich. 973 (2018).

Petitioner's sentencing guidelines calculation resulted in a recommended minimum sentencing range of 270 to 450 months, but the trial court sentenced him to 45 to 80 years (540 to 960 months). *People v. Lee*, No. 316110, 2018 WL 1652470, at *1 (Mich. Ct. App. Apr. 5, 2018). On remand, the court of appeals found the trial court had not explained or justified its departure from the guidelines range when it imposed Petitioner's sentence. *Id*. at *3. The court remanded the case for re-sentencing, directing the trial court, if it departed from the sentencing guidelines again, to "explain on the record why the extent of the particular departure it imposes is proportionate." *Id*. at *4.

Neither party appealed the court of appeals' remand order. To date, according to the register of actions at the Wayne County Third Circuit Court, Petitioner has not been resentenced pursuant to the April 2018 order.[4]

Petitioner filed a motion for relief from judgment in the trial court, in which he argued four claims of error: ineffective assistance of trial counsel for failure to introduce a victim's 911 call into evidence; improper closure of the courtroom during jury selection; judicial bias; and ineffective assistance of appellate counsel, the last providing good cause for his failure to raise the first three issues on direct appeal. The trial court denied relief on all four issues. Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court, both of which denied leave in standard form orders. *People v. Lee*, No. 338342 (Mich. Ct. App. Oct. 27, 2017), *aff'd*, 501 Mich. 1074 (2018).

Petitioner, through counsel, filed a timely petition for writ of habeas corpus on February 1, 2019, in which he raised eight issues. Respondent

---

[4] "[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record." *United States v. Mont*, 723 F. App'x 325, 327 n.3 (6th Cir.), *cert. granted*, 139 S. Ct. 451 (2018), *and aff'd on other grounds*, 139 S. Ct. 1826 (2019) (citation omitted).

was ordered to file an answer to the petition. Instead, on September 27, 2019, Respondent filed a motion to stay or dismiss the petition, because Petitioner had not been resentenced pursuant to the court of appeals April 2018 order. (ECF No. 5.) Petitioner filed an amended petition on October 16, 2019, withdrawing the first four issues of his original habeas petition, including the sentencing claim that was the basis for Respondent's motion. (ECF No. 7, PageID.4809, n.1.) Petitioner also filed motions for summary judgment, for the Court to grant the writ as unopposed, and for release on bond. (ECF Nos. 9, 11, 12.) The Court denied both Plaintiff's and Respondent's motions and directed a response to the amended petition in an order dated July 6, 2020. (ECF No. 13.) The Court also denied Plaintiff's motions for reconsideration. (ECF Nos. 14, 15 (motions); ECF No. 19 (order).)

Following amendment of the petition, these four issues remain before the Court:

    I.   COUNSEL'S PERFORMANCE WAS CONSTITUTIONALLY INEFFECTIVE AND PREJUDICIAL WHEN COUNSEL FAILED TO INTRODUCE INTO EVIDENCE THE RECORDED 911 CALL IN WHICH DECEDENT ASHLEY CONAWAY DECLARED THAT SHE "DID NOT KNOW WHO SHE WAS WITH" AFTER THE KIDNAPPING DESPITE

THAT SHE AND DEFENDANT-APPELLANT LEE WERE INDISPUTABLY WELL KNOWN TO ONE ANOTHER.

II. THE COURT'S DELIBERATE EXCLUSION OF DEFENDANT LEE'S FAMILY, FRIENDS, AND SUPPORTERS FROM THE COURTROOM DURING VOIR DIRE OF PROSPECTIVE JURORS DEPRIVED HIM OF HIS SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL RESULTING IN STRUCTURAL ERROR AND . . . COUNSEL'S FAILURE TO OBJECT TO SAME WAS INEFFECTIVE ASSISTANCE OF COUNSEL.

III. DEFENDANT-APPELLANT LEE WAS DEPRIVED OF HIS RIGHT TO BE TRIED BEFORE AN IMPARTIAL, NEUTRAL, AND DETACHED JUDGE WHEN THE TRIAL COURT JUDGE HERSELF OPENLY ADMITTED HER PERSONAL INTEREST IN THE CASE BY: (1) CONFESSING THAT THE CASE "VERY EMOTIONAL AND IMPORTANT," TO HER AS THE COURT; (2) PIERCING THE VEIL OF JUDICIAL IMPARTIALITY THROUGHOUT THE TRIAL BY DEMONSTRATING FAVORITISM TOWARDS THE PROSECUTION'S THEORY OF THE CASE AND BY CREATING PRESUMPTION IN FAVOR OF THE PROSECUTION, REQUIRING REVERSAL.

IV. DEFENDANT-APPELLANT LEE SUFFERED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AND THEREFORE HAD GOOD CAUSE FOR FAILING TO RAISE THE CONSTITUTIONAL VIOLATIONS NOW SET FORTH HEREIN ON DIRECT APPEAL.

## II.   Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standard of review for federal habeas cases brought by state prisoners. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established law "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application'

prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413; *Bell v. Cone*, 535 U.S. 685, 694 (2002)). In order for a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision "must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)). A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 586 U.S. 86, 88 (2011) (citing Y*arborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 98. However, when a state court has explained its reasoning, that is, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Accordingly, when the last state court to rule provides no basis for its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and apply *Ylst*'s presumption. *Id.* The "look through" rule applies whether the last reasoned state court opinion based its ruling on procedural default, *id.* at 1194 (citing *Ylst*, 501 U.S. at 803), or ruled on the merits. *Id.* at 1195 (citing *Premo v. Moore*, 562 U.S. 115, 123–133 (2011)) (other citation omitted).

Finally, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A habeas petitioner may

rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.   Discussion

### A.   Initial matters

First, the Michigan Court of Appeals and Supreme Court denied Petitioner leave to appeal the trial court's denial of his motion for relief from judgment in standard form orders which provided no explanation for the courts' decisions. Accordingly, this Court will "look through" to the trial court's written opinion and statements on the record for its reasoning and will presume the appellate courts' decisions "rest upon the same ground." *Wilson*, 138 S. Ct. at 1194.

Second, Respondent contends that Petitioner's first three claims are barred by procedural default. The Court declines to address that defense as it is not a jurisdictional bar to review of the merits. *See, e.g., Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*,

351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. Accordingly, the Court will proceed to the merits of Petitioner's claims.

## B. Analysis of the merits[5]

### 1. Ineffective assistance of counsel for failure to introduce 911 call

In his first claim of error, Petitioner asserts that he and Ashley Conaway were well known to one another. As a result, Ashley's statement to the 911 dispatcher that she did not know who was in the car with her was "very favorable evidence" to him. (Mot. Rel. J., ECF No. 6-32, PageID.4017-18.) Counsel's failure to introduce that evidence was ineffective assistance, he argues, and had it been introduced, it would

---

[5]   As neither the original petition (ECF No. 1) nor the amended petition (ECF No. 7) were accompanied by a brief in support, the Court relies on Petitioner's arguments as presented in his Motion for Relief from Judgment in the trial court (ECF No. 6-32), which raises the same issues as those raised here; as well as Petitioner's Motion for Summary Judgment, which briefed extensively his second claim, the courtroom closure during voir dire. (ECF No. 9.)

have provided the jury grounds for reasonable doubt as to Petitioner's involvement in the abductions and murders. (*Id.*)

The trial court disagreed that the omission of the 911 call undermined trial testimony. (Order, 12/13/16, ECF No. 6-33, PageID.4085.) The court found Petitioner's argument illogical, questioning "how the decedent [Ashley] could have determined who was riding in the car if she was locked in the trunk?" (*Id.* at PageID.4086.) In addition, to demonstrate the 911 call could not overcome the "overwhelming evidence" against Petitioner, the court cited the same record facts on which the court of appeals relied when it rejected Petitioner's argument that insufficient evidence supported his guilty verdict. (*Id.* at PageID.4085-86.) This included testimony by different witnesses connecting Petitioner with his co-defendants in different contexts and locations; identifying him by his braids; and cellphone records showing Petitioner's phone was used in the same location as his codefendants and one of the victims shortly after the kidnapping, as well as for another two hours in the area where the victims were buried. *See Brown*, 2016 WL 146029, at *18. The court held Petitioner had not met the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984),

13

because the emergency call's introduction would not have changed the outcome of the trial. (ECF No. 6-33, PageID.4086-87.)

Claims for habeas relief based on ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer of deference is the familiar deficient performance plus prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). That is, a habeas petitioner must show "that counsel's representation fell below an objective standard of reasonableness[,]" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694)). *Strickland* requires a "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689).

AEDPA provides the second layer of deference, under which a federal habeas court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 134 S. Ct. at 18). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

The trial court did not address *Strickland*'s first prong, other than relying on *Strickland*'s presumption of effectiveness to reject the claim. Even on *de novo* review, which habeas courts may apply when "not circumscribed by a state court conclusion" on a part of the *Strickland* test, *Wiggins*, 539 U.S. at 534, "the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 689).

Petitioner has not established that trial counsel's performance fell below professional standards. First, he argues his trial attorney was incompetent for not introducing the 911 call after counsel "tease[d] the

jury with the idea of favorable evidence" and "discussed [the recorded call] extensively during his opening statement. . ." (ECF No. 6-32, PageID.4018.) But this argument is misleading. Petitioner's counsel never mentioned Ashley's 911 call; it was co-defendant Cain's attorney who did so, noting that she did not identify her abductors. (*See* Trial Tr., 10/30/12, ECF No. 6-9, PageID.418, 420-30.)

Regardless, Petitioner cannot overcome the presumption that counsel's decision was sound trial strategy. Petitioner's trial counsel might have chosen not to introduce the 911 call because another portion of the call might have implicated Petitioner. Or counsel might have feared the simple emotional impact on the jury of hearing Ashley speak from the trunk of her abductors' car as she sought to prevent her own murder and that of her best friend.

Even if counsel's decision was not strategic, however, Petitioner's claim fails on the second *Strickland* prong, prejudice. The trial court did not apply *Strickland* unreasonably when it cited substantial evidence that supported his conviction which the omitted evidence would not have overcome. Petitioner was not prejudiced by counsel's performance, and he is not entitled to habeas relief on this claim.

## 2. Court closure during voir dire

Petitioner next argues that by barring the public from attending jury selection, the trial court violated his Sixth Amendment right to a public trial, and that the court's action was structural error warranting automatic reversal. (ECF No. 6-32, PageID.4022-23.) Alternatively, trial counsel was constitutionally ineffective for failing to object to the courtroom closure. (*Id.*) The trial court disagreed, because Michigan precedent, *People v. Vaughn*, 491 Mich. 642 (2012), mandates a contemporaneous objection to the closure of a courtroom, and no objection was made. (ECF No. 6-33, PageID.4087.)

This Court addressed much of Petitioner's argument in support of his courtroom-closure claim in its order denying Petitioner's motions for summary judgment and to grant the writ. (*See* ECF No. 13.) Nonetheless, because that order was focused on the denial of a summary judgment motion, and the instant order resolves in full Petitioner's application for the writ of habeas corpus, the Court will address the claim again here.

Petitioner is correct that "the public-trial right extends to jury selection as well as to other portions of the trial." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1906 (2017) (citing *Presley v. Georgia*,

558 U.S. 209 (2010) (per curiam)). However, "the Court has not said that a public-trial violation renders a trial fundamentally unfair in every case." *Id.* at 1910. The right to a public trial "can be waived when a defendant fails to object to the closure of the courtroom . . ." *Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009), *abrogated on other grounds by Weaver*, 137 S. Ct. at 1899. *See also Peretz v. United States*, 501 U.S. 923, 936 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619 (1960), for the premise that "failure to object to closing of courtroom is waiver of right to public trial.").

*Weaver* also reviewed a claim of ineffective assistance of counsel, similar to Petitioner's alternative claim, for failing to object to the courtroom closure during voir dire. It held that "*Strickland* prejudice is not shown automatically"; instead a defendant must demonstrate "a reasonable probability of a different outcome . . ." or that the closure rendered the trial "fundamentally unfair." *Id.* at 1911. The *Weaver* Court assumed without deciding that regardless of whether a reasonable probability of a different outcome is shown, the overriding question is whether the petitioner received a fundamentally fair trial. *Id.*

*Weaver* then concluded its petitioner had not shown counsel's failure to object to the closure rendered the trial fundamentally unfair:

> Although petitioner's mother and her minister were indeed excluded from the courtroom for two days during jury selection, petitioner's trial was not conducted in secret or in a remote place. The closure was limited to the jury *voir dire*; the courtroom remained open during the evidentiary phase of the trial; the closure decision apparently was made by court officers rather than the judge; there were many members of the venire who did not become jurors but who did observe the proceedings; and there was a record made of the proceedings that does not indicate any basis for concern, other than the closure itself.

*Id.* at 1913 (citation omitted). Many of those factors are present here as well: the limited exclusion of Petitioner's family members; the transcription of the proceedings; the fact the trial was otherwise held openly; and the large jury pool observing the proceedings, most of whom would not be selected as jurors.

Under *Weaver*, Petitioner did not receive a fundamentally unfair trial because the trial court closed the courtroom during voir dire, nor was trial counsel constitutionally ineffective for failing to object to the closure. Petitioner is not entitled to habeas relief on these issues.

19

### 3. Judicial bias

Petitioner next claims he was deprived of his right to be tried before an impartial and neutral magistrate, because the judge was personally interested in the case and demonstrated favoritism toward the prosecution. Petitioner argues a single statement by the court evinces such an emotional attachment to the case that the judge should have recused herself; and otherwise relies on the court's use of the term "victim" to argue he was denied a fair trial. These facts do not establish judicial bias which rendered Petitioner's trial fundamentally unfair.

At Petitioner's arraignment, the trial court stated the case was a "very emotional and important case for everybody: for the Court, for the prosecution, for the defendants." (Arr. Tr., 6/5/12, ECF No. 6-2, PageID.36.) Not only did the statement take place in a proceeding with no possible influence on the jury's verdict, but reviewed in context, the court was taking into consideration *all* participants' interests in addition to her own, expressly including the defendants'. Further, the court's observation was a preface to its insistence there would be no "foolishness" in the courtroom, whether by the family of the defendants or the victims,

which again, would protect, not harm, defendants' rights. (*Id.* at PageID.36-37.)

Somewhat more concerning is the court's use of the term "victim" over thirty times in its instructions to the jury. (Trial Tr., 12/6/12, ECF No. 6-28, PageID.3762-80.) Petitioner cites three additional instances during the lengthy trial when the court referred to Ashley Conaway and Abreeya Brown as "victims." (ECF No. 6-32, PageID.4029.)[6] However, the court's use of the term does not rise to a finding of impermissible judicial bias.

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (citations omitted). "Judicial bias is a deep-seated

---

[6] Petitioner also claims the trial court made "'emotional' rulings and decisions," but in support he asserts only that "[t]he effect was real but intangible; unquantifiable and immeasurable but manifest." (ECF No. 6-32, PageID.4027.) Such an amorphous assertion fails to meet his burden of establishing his entitlement to relief. *See Black v. Carpenter*, 866 F.3d 734, 744 (6th Cir. 2017) (quoting *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)) ("[I]n a habeas proceeding the petitioner 'has the burden of establishing his right to federal habeas relief and of *proving all facts necessary* to show a constitutional violation.'") (emphasis added).

favoritism or antagonism that makes fair judgment impossible." *Coley v. Bagley*, 706 F.3d 741, 750 (6th Cir. 2013) (citing *Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971)). "A biased decision-maker is constitutionally unacceptable." *Id.* (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). But "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Courts apply a "fundamental presumption" of judicial impartiality. *Cameron v. Rewerts*, 841 F. App'x 864, 866 (6th Cir. 2021) (citations omitted).

The trial court's one-time declaration that the case was "very emotional and important" is too slight to bear the weight Petitioner places on it, as he attributes a "miscarriage of justice" to the judge's "emotional[] attach[ment] to the case. . ." (ECF No. 6-32, PageID.4034.) The court's statement was in no way evidence of a "deep-seated antagonism" that would make a fair trial impossible. *Coley*, 706 F.3d at 750. Its observation that a case of abduction, torture, and murder of two young people is "emotional" is unsurprising. More importantly, the statement does not rise to *Liteky*'s potentially objectionable "judicial

remarks during the course of a trial" – which generally do not support a bias challenge – because it was not an expression of criticism or hostility to the parties or their counsel.[7] 510 U.S. at 555.

The use of the term "victim" during jury instructions, while less than ideal, also fails to demonstrate Petitioner was denied a fair trial. The court specifically instructed the jury that the court's "comments, rulings, questions and instructions are . . . not evidence," and that jurors should pay no attention to their perceptions of the court's opinion of the case. (Trial Tr., 12/6/12, ECF No. 6-28, PageID.3753.) The Court also notes Petitioner's attorney had no objections to the jury instructions as given. (*Id.* at PageID.3794.)

Moreover, other courts have found the use of the term "victim" does not violate a habeas petitioner's fair trial rights. In a homicide case, "the trial judge's use of the term 'victim' merely stated the obvious and was

---

[7]  Responding to Petitioner's challenge to the court's characterization of the case as "emotional," the trial court's order denying his motion for relief from judgment notes, "this Court wonders what manner of sociopathic heartless individual would not find this case 'very emotional.'" (ECF No. 6-33, PageID.4088.) The court's rhetoric is certainly extreme, but the remark, four years after Petitioner's conviction and sentence, is outside *Liteky*'s "course of trial," 510 U.S. at 555, and not contemporaneous evidence of bias affecting Petitioner's fair trial rights.

not an indication of bias." *Carr v. Romanowski*, No. 14-CV-11580, 2017 WL 5665956, at *3 (E.D. Mich. Nov. 27, 2017) (citing *Medina v. Hornung*, 106 F. App'x 539, 542 (9th Cir. 2004)). That is, Ashley and Abreeya were "victim[s] of a shooting without regard to whether [Petitioner] fired the fatal shot." *Id.* (citation omitted). *See also Garcia-Dorantes v. Warren*, 769 F. Supp. 2d 1092, 1105 (E.D. Mich. 2011) (the prosecutor's use of the term "victims" to describe complainants did not violate a habeas petitioner's due process rights). Finally, the Court has not found, nor has Petitioner cited, a Supreme Court precedent clearly establishing the use of the term "victim" to refer to a complainant or decedent deprives a criminal defendant of a fundamentally fair trial.

The trial court rejected Petitioner's argument, noting that no evidence existed of "deep-seated favoritism or antagonism," as required by Michigan law. (ECF No. 6-33, PageID.4089.) The Michigan standard corresponds with clearly established federal law, *see Liteky* 510 U.S. at 555, and the court's application of it was not unreasonable. Further, neither the judge's use of the term "victim" nor her reference to the case as an emotional one "establishes that the judge held an actual bias against [Petitioner] or evinces a predisposition 'so extreme as to display

clear inability to render fair judgment.'" *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (quoting *Liteky*, 510 U.S. at 551) (other citation omitted). Petitioner has not established that he is entitled to habeas relief on this issue.

### 4. Ineffective assistance of appellate counsel

Finally, Petitioner claims his appellate attorney was ineffective for failing to raise on direct appeal the preceding three issues. Again, the "doubly deferential" standard of *Abby*, 742 F.3d at 226, applies, and the Court must determine whether the state court "objectively unreasonabl[y]" applied *Strickland*, 466 U.S. 668, to Petitioner's case. *Bell*, 535 U.S. at 699; *see also Harrington*, 562 U.S. at 101.

Where "underlying arguments are meritless; it could scarcely be ineffective of appellate counsel not to raise them." *Coley*, 706 F.3d at 752 (citing *Rashad v. Lafler*, 675 F.3d 564, 571 (6th Cir.2012)). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Id.* (citation omitted). Because the Court has examined each of the claims in the petition and determined they lack merit, Petitioner cannot demonstrate either deficient performance or prejudice thereby. The state court was thus not unreasonable to find Petitioner's appellate

counsel was not ineffective. Petitioner is not entitled to habeas relief on this claim.

## IV.   Conclusion

Based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus (ECF Nos. 1, 7) is **DENIED WITH PREJUDICE.**

The Court also **DECLINES** to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). If Petitioner decides to appeal this Court's decision regardless, he may not proceed *in forma pauperis* because an appeal could not be taken in good faith.

**IT IS SO ORDERED.**

Dated: August 29, 2022     s/Terrence G. Berg
                           TERRENCE G. BERG
                           UNITED STATES DISTRICT JUDGE